Freedman, J.
The issues in this action were tried by a referee, and the case on appeal, as settled and filed and printed, states that it does not contain all the testimony *321 given at the trial bearing upon the questions at issue, the findings made and refused, and the evidence admitted or ruled out under defendant’s exception.
That being so, the duty of the general term in such a -case ordinarily is to see whether the facts as found by the referee support the conclusions of law at which he arrived. Nevertheless, if certain evidence, and notably documentary evidence, contained in the printed record, about which there is no dispute and which cannot be affected by the omitted testimony, should clearly establish that the findings of facts are incomplete, or somewhat at variance with the real fact, effect may and should be given to such undisputed evidence in the determination of a question distinctly raised by the exceptions.
The referee made one hundred and thirty-four findings of fact at the request of the plaintiffs, which are set forth on pages 102 and 129, and about seventy more at the request of the defendant, which appear on pages 61 to 95 of the printed case.
Briefly stated, the action was brought to recover losses alleged to have been sustained by the plaintiffs as defendant’s agents upon various contracts of purchase and sale of merchandise made by them for defendants’ account and pursuant to his orders.
The main defense, besides what may be deemed to be a general denial of everything except the employment and the giving of certain orders, is that the plaintiff's did not faithfully carry out the defendant’s orders and that they without authority canceled most of the contracts before they matured.
To establish their case, it was incumbent upon plaintiffs to prove affirmatively:
1. That the several contracts set forth in their bill of particulars were actually made.
2. That each of these contracts was severally carried out; and
3. That the losses alleged to have been suffered on each contract were actually sustained in the fulfillment thereof.
The referee found that the plaintiffs had established their case in these particulars according to customs and usages binding upon the defendant, notwithstanding the further fact which he also found, that the plaintiffs, as agents of the defendant, and without consultation with or notice to the defendant, had canceled most of the contracts sued on before their maturity.
The most important question presented by the appeal, therefore, relates to the legal effect of such cancellation upon the rights and liabilities of the parties in view of all *322 .the other facts found, and in view of the undisputed documentary evidence in respect to said customs and usages.
During all the time in question the plaintiffs were co-partners as commission merchant? in grain and provisions, carrying on business in the city of New York under the firm name of E. A. Kent & Co., and in the city of Chicago, 111., under the firm name of Poole Kent & Co.
During the same time, there existed in the city of New York an organization known as the New York produce exchange, and in the city of Chicago.an organization known as the Chicago board of trade. Transactions in buying and selling grain and provisions for future delivery were had and made in both organizations. Each of them had a membership, and transactions therein were confined to members, or the immediate agents or representatives óf members, and each of said organizations had rules, customs .and methods of transactions in grain and provisions for future delivery which were substantially the same in both oi'ganizations. In November, 1881, the defendant employed the plaintiffs as commission merchants or brokers to buy and sell for his account and risk, and upon his order, grain and provisions for future delivery in the markets of New York city and of Chicago, 111., and such employment and authority continued until April, 1882. Prior to, at and during such employment the defendant knew of the organization referred to; he knew that the plaintiffs, or some of them, . were members of the New York produce exchange, apd that at least one of them was a member of the Chicago board of trade; and he must be assumed to have employed them because they were such members, and he was not, because he intended that his orders should be executed by them in said organizations according to the rules and customs established by said organizations. Indeed, in view of the findings made by the referee, all the orders given by the defendant must be assumed to have been given under the circumstances and for the purposes stated. The orders which were given were executed by the plaintiffs by their entering into contracts of purchase or sale for future delivery with other members of the organizations named, but such contracts were, soon after they had been made, canceled by the plaintiffs against other contracts made by them for account of other customers on the opposite side of the market. This cancellation is sought to be upheld under certain rules and customs of the said organizations. The most material findings made by the referee upon this branch of the case are as follows, viz.:
33. That as to all of said transactions prior to April 11, 1882, defendant in no case requested the manual delivery *323 of the merchandise covered thereby to or by himself, or in his behalf. ’
34. That as to all of said transactions which were - consummated upon defendant’s order or authority, prior to April, 1882, defendant ordered or authorized the consummation of his sales or purchases before the time for delivery had arrived pursuant to the contract, by making a purchase to meet the prior sale, or a sale to meet a prior purchase of an equal quantity of merchandise of a like delivery.
35. That until said transactions were so consummated by defendant’s authority, plaintiffs’ firm had at all times the obligation of a firm or person other than itself to make a delivery of merchandise sold, and to receive and pay for merchandise bought upon defendant’s order (but plaintiffs did not specify, and have not specified such person or firm).
36. That according to the customs and rules prevailing as to said transactions defendant entered into no obligation therein except to plaintiff firm.
37. That as to all of said transactions which defendant ordered or requested plaintiff firm to make in his behalf, and for his account, defendant, for the carrying out or consummation thereof, looked to plaintiff firm alone.
38. In accordance with such rules and customs, defendant was freed from all liability as to each sale consummated by a purchase, and as to each purchase consummated by a sale, immediately upon such consummation thereof, although the time for delivery had not arrived' (except to pay to plaintiffs all sums required to meet the losses incurred in said transactions, and plaintiffs’ expense and commission).
■57. That in case of all the transactions which plaintiffs made in their own names upon the order or by authority of the defendant, plaintiffs bound themselves by an agreement in their own names to make a delivery of all merchandise sold or directed to be sold, and to receive a delivery of all merchandise purchased or contracted to be purchased.
- 58. That by the rules and customs in like cases plaintiffs made said transactions by means of option, or time contracts, interchangeably with other commission merchants and members of said exchange.
59. That the option contained in said time contracts is not an option as to performance, but only as to the time of delivery of merchandise specified therein.
60. That such option contracts are not by rule, custom or otherwise, transferable by endorsement or by delivery, but are either canceled by or through counter-contracts of the same party, or are performed by actual delivery of *324 merchandise designated therein at the time of the maturity thereof. *
61. That in case such option contract made upon defendant’s order should be canceled and surrendered, plaintiffs would not thereupon, and did not in any such case acquire any pecuniary interest whatever in the merchandise covered thereby, nor in the delivery thereof.
62. That in case of such surrender and cancellation, defendant had the same right as before to require through plaintiff firm the delivery to himself, if a purchase, and by himself, if a sale of the merchandise covered by said option or time contract at the price designated, and at the time of the maturity thereof.
63. That in case of such cancellation and surrender of option or time contract made upon defendant's orders at the exchanges, plaintiffs could not, in any case, foresee or select the parties with whom, nor could they foresee the counter-contracts against which such cancellation should be made.
64. That under the rules and customs of the produce exchange, in every instance of such cancellation of a contract of purchase or of sale, plaintiff firm would acquire the obligation of the party at whose request it had made the counter-transactions as security (in additon to its owii guarantee that the transactions upon defendant’s order should be carried out according to the terms thereof).
68. That by the rules of the exchanges, and the rules and customs of the trade in all cases of sales or purchases for future delivery, it is the right of the commission merchant or member of the exchange holding the option or time contract of another such merchant or member to require the maker of said contract to deliver or furnish margins or securities for the fulfillment thereof at its maturity, and to increase the said margins or securities to meet the changes in the market price.
■ 69. That in case of the cancellation of such option or time contract, according to like rules and customs of trade, if the market price named in the option or time contract against which it was canceled, was below the price named therein, the maker of said option-of a sale, and the party with whom made, if a purchase, paid to the other party thereto at the time of- such cancellation or surrender thereof, thereof, the difference between the two prices named in said options respectively.
70. That such difference paid is not limited, controlled or affected by the market price of the merchandise covered thereby at' the time of such cancellation or surrender •thereof.
71. That in cases, where contracts of purchase or salé *325 were off-set or canceled, they were so off-set or canceled by means of the forming of direct settlements or ring settlements.
72. That said options or time contracts represent no actual market value, except in case of a variation in the market price between the time of the making and the time of the consummation thereof.
73. That in case of such variation said option contracts represent no such value to the holder unless the market price has declined, if it be a contract of sale for future dedelivery, and unless it has advanced, if it be a contract of purchase for future delivery.
• 76. That in such settlement or cancellation of option or time contracts made upon defendant’s order, with like contracts made upon the order of another client, the same received were not always received in whole or in part for defendant’s benefit, nor by virtue of his transactions, or the transactions made at his request, and the sums paid were not always chargeable, in whole or in part, against defendant, or transactions made at his request and for his account.
77. That the mutual surrender or cancellation of option or time contracts is commonly called ringing out or a settlement thereof.
78. That the circumstances and method of the cancellation or surrender of option or time contracts are as follows: That purchases or sales to fill orders of customers are usually made on the floor of the exchanges respectively by open public offers to the members of the board there assembled, that when it so occurs that a commission merchant who, upon the order of one customer, has sold to or purchased from another commission merchant, merchandise for a certain future delivery, and, afterwards, upon the order of another customer, makes a like transaction for a like amount of the same class of merchandise, and the same delivery with the same commission merchant, but, on the opposite side of the market, then the two commission merchants, as between themselves, set off the contract of purchase as against the contract of sale, and mutually surrender or cancel said contract, settling between them the difference in price. And where such second transaction is not with the same commission merchant with whom the first had occurred, but a different one, and it is found that a circuit of like contracts exists by or through means of which the same merchandise which a commission merchant upon the order of some other customer has sold for future delivery upon the order of some other customer he had purchased for future delivery, the commission merchants having such circuit, which, in the language of the ex *326 changes, is called a “ring,” do not make successive deliveries of the merchandise until the same shall come back to the one who first delivered it, but each pays or receives the difference in amount between the price at which he sold and the price at which he bought.
There are many other findings bearing more remotely upon the point now under consideration, but the foregoing statement contains substantially all upon which the plaintiffs can rely, to sustain the ruling of the referee that the defendant remained bound upon contracts which had been' canceled without consultation with or notice to them.
That the plaintiffs, as agents of the defendant, made such cancellation without consultation with, or notice to, the defendant at the time of the cancellation, is one of the undisputed facts of the case.
Now upon the facts hereinbefore stated the defendar», contends that by such cancellation the plaintiffs converted the said contracts to their use to facilitate their business in other respects; that by such cancellation the plaintiffs released the parties with whom the contracts had been made by the plaintiffs, from all liability therein; that in consequence thereof,, and no other parties or contracts having been actually substituted, whatever remained to be done between the plaintiffs and defendants thereafter, was, by plaintiffs’ own acts, reduced to a mere wager transaction, although the contracts between the plaintiffs and the defendant may have been valid in their origin; and that for these reasons the plaintiffs cannot recover upon the canceled contracts.
In my judgment the contention of the defendant is well ■ founded, because the referee has nowhere found either that ■ the principals for whose benefit the contracts had been made, were substituted in some effective way, or that other contracts were actually and specifically substituted in placo of the canceled ones. The canceled contracts were máde oh both sides by commission merchants or brokers in their names and without a disclosure of their respective prineiEals, and when the commission merchants or brokers who ad thus contracted, or a number of them standing in a ring canceled the contracts as between themselves, without substituting their principals in some effective way, they canceled the entire contracts, and released each other or one another from the obligations thereof, and the contracts became extinguished.
Liability on a contract to buy and sell necessarily implies, that there are parties to the contract, one of whom has the right to deliver merchandise and the other of whom is liable to pay for that merchandise. The buyer and seller must exist as well as the contract. In the case at bar all the *327 plaintiffs did in fact was to substitute themselves in place of the released parties. Such a practice in effect violates the law of principal and agent, because it enables the agent to buy from and sell to his principal and charge his principal commissions for making such purchases and sales.
It is claimed by the plaintiffs, however, that in the present case the defendant should be held bound, because he assented to a continuance of his liability by assenting to the customs and usages of the exchanges. Even if this had been strictly so, it would not follow that the defendant .should be held, because a legal liability can never be created by an assent to a custom or usage which in itself is contrary to established legal principles.
In point of fact, the referee did not correctly set forth in Ms findings the custom or usage of the exchange. He only ■set forth so much of it as coincided with the practice of the plaintiffs. The defendant’s assent, on the other hand, attached to the custom or usage as established by the exchanges, and the proof of that is to be found in a printed rule which is set forth in the printed case at length and about which there is no dispute.
This rule cannot in any wise be affected by the testimony omitted from the printed case. It is as follows, viz.:
“ § 37. In case any member of. the exchange, acting as a. commission merchant, shall have made purchases or sales, - by order, or for account of another, whether the party for whom such purchase or sale was made, shall be a member of the exchange or otherwise, and it shall subsequently appear that such trades may be offset and settled by other trades made by such commission merchant, he shall be authorized to make such offset and settlement, and to substitute such other person or persons for the one whom, or-to whom he may have purchased or sold the property originally, provided, that in case of substitution the member or firm making the sale shall be held to guarantee to his or their principal the ultimate fulfillment to all contracts made for account of such principal which have been so transferred, and shall be held liable to such principal for all changes or losses resulting from such substitution.”
The rule, as set forth in full, evidently contemplated • actual substitution in some effective way, so that the substituted parties and contracts can be identified and ascertained. Thus construed the custom sanctioned by the rule may bé deemed to be founded in commercial convenience and not in contravention of law.
The case of Irwin v. Williar and another (110 U. S. Reports, 499), does not help the plaintiffs. In that case it is true it was claimed that the contracts were wagering contracts and void. This claim, however, was made in *328 reference to the original contracts entered into between-Irwin and Davis on the one side and the Baltimore commission merchants on the other side, and it was concerning; that claim that the supreme court of the United States held that the question had been properly submitted to the jury and that the verdict ,of the jury should not be disturbed on the ground stated. Another assignment of error was that, against Irwin’s objection and exception, the circuit court had admitted evidence showing the existence among the-Baltimore grain commission merchants operating through the flour exchange in that city, of a custom of canceling; contracts between them and substituting others, and that the circuit court had held the custom valid and binding upon Irwin, although neither he nor his firm had any knowledge of it.
There was some proof in the case that other contracts had' been substituted, and it was assumed throughout that a sufficient substitution had been made, and all that the court was called upon to decide was whether the substitution was binding upon Irwin without proof' of his assent. It was held that Irwin was'-not bound without such proof, and for this reason the judgment of the circuit court was reversed and a new trial ordered.
In the later case of Higgins and another v. McCrea (116 U. S. Rep., 671), the question as to the sufficiency of the-substitution claimed, came directly before the court. Acting under a rule like the one hereinbefore considered, the-plaintiffs, who in that case were commission merchants, released the seller from his contract, and - having many similar transactions in their business, proposed to themselves to substitute in the place of the contract with the-seller, the agreement of such other contractor as might be available for the purpose at the time of settlement, but designated no particular contractor or contract.
It was held that an instruction to the jury upon these-facts that there-had been no valid substitution of other contracts for those which were canceled, and that consequently plaintiffs could not recover, was correct.
The examination, so far made, conclusively demonstrates that the referee did not in his findings of fact correctly set forth the custom or usage upon which the defendant was held liable, and that the referee erred in holding the defendant liable upon the canceled contracts in the absence of proof that actual substitution was made.
The appeal presents other questions besides the one discussed, but as to them it is not considered necessary to express an opinion now.
The judgment should be reversed upon the facts as well as the law, the order of reference vacated, and a new *329 trial ordered, with costs to the appellant to abide the event.
. Sedgwick, Ch. J., and Ingraham, J., concur.